UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

UNITED STATES OF AMERICA,

                Plaintiff,

  -against-                                  1:23-CV-406 (LEK/DJS)

RICHARD SHERWOOD,

                Defendant,

  -and-

PIONEER BANK,

                Garnishee.

---

UNITED STATES OF AMERICA,

                Plaintiff,

  -against-

RICHARD SHERWOOD,

                Defendant,

  -and-

DELAWARE CHARTER GUARANTEE AND TRUST
COMPANY d/b/a PRINCIPAL TRUST,

                Garnishee.

---

## <u>MEMORANDUM-DECISION AND ORDER</u>

**I. INTRODUCTION**

      Pending before this Court are Defendant Richard Sherwood's objections to two answers to a writ of garnishment issued pursuant to 28 U.S.C. § 3205(b)(1) of the Federal Debt

Collection Procedures Act of 1990 ("FDCPA") and 18 U.S.C. § 3663A of the Mandatory Victims Restitution Act of 1996 ("MVRA"). Dkt. No. 16 ("Objections"). Specifically, Defendant objects to the answers of Pioneer Bank and Delaware Charter Guarantee and Trust Company d/b/a Principal Trust ("Principal Trust"). See Dkt. Nos. 13 ("Pioneer Bank Answer"), 14 ("Principal Trust Answer"). For the reasons that follow, Defendant's Objections are rejected.

## II.  BACKGROUND

### A.  Criminal Conviction

On June 11, 2018, Defendant pled guilty to one count of conspiracy to launder money in violation of 18 U.S.C. §§ 1956(h), (a)(1)(B)(i), and two counts of filing a false income tax return in violation of 26 U.S.C. § 7206(1). See United States v. Richard Sherwood, No. 18-CR-168 ("Criminal Docket"), Dkt. Nos. 3, 4, 46. Defendant was sentenced to a total term of imprisonment of fifty-four months, as well as one year of supervised release. See Criminal Docket, Dkt. No. 46 at 2–3. In addition, Defendant was ordered to pay $5,560,505 in restitution and a special assessment of $300. See id. at 6.

As part of his plea agreement, and separate from the restitution requirement, Defendant consented to the entry of an order directing the forfeiture of certain assets. See Criminal Docket, Dkt. No. 3 at 2–3. On July 5, 2018, this Court entered the preliminary order of forfeiture. See Criminal Docket, Dkt. No. 10. The final order of forfeiture was entered on January 18, 2019. See Criminal Docket, Dkt. No. 23 ("Final Forfeiture Order").

### B.  Writ of Garnishment

On March 31, 2023, the Honorable Daniel J. Stewart, United States Magistrate Judge, granted the Government a writ of garnishment ("Writ") to collect on Defendant's unpaid restitution. See United States v. Richard Sherwood, No. 23-CV-406 ("Civil Docket"), Dkt. Nos.

5, 5-1. Pursuant to 28 U.S.C. § 3202(c), this Writ was served on Principal Trust and Pioneer Bank on April 3, 2023.

On April 10, 2023, Pioneer Bank provided its answer to the Writ, indicating that it was in possession of two retirement accounts with a combined value of $77,723.23. See Pioneer Bank's Answer at 2. Principal Trust returned its answer on April 18, 2023, indicating that it possessed a 401(k) pension plan in Defendant's name with a total value of $713,627.88. See Principal Trust's Answer at 6.

### C. Defendant's Objections

On May 3, 2023, Defendant timely filed his Objections to the garnishees' Answers pursuant to 28 U.S.C. § 3205(b)(5). Most significantly, Defendant seeks a stay pending the outcome of the application for a writ of certiorari in the similar Second Circuit case United States v. Shkreli, 47 F.4th 65 (2d Cir. 2022). In Shkreli, the Second Circuit held that the Consumer Credit Protection Act of 1968 ("CCPA") allows the Government to garnish lump sum retirement accounts in their entirety. See id. at 76–77. Defendant argues that the holding of Shkreli was incorrect, and therefore petitions this Court to refrain from allowing the garnishment of his retirement fund until the Supreme Court disposes of the application for certiorari.

Defendant also seeks to have the value of his forfeited property credited towards his restitution balance. Defendant notes that, as of March 31, 2023, he still owed $5,560,305 in restitution. See Objs. at 2. This is despite the "millions of dollars in seized assets" taken pursuant to the Court's Final Forfeiture Order. Id. Finally, Defendant requests a garnishment hearing pursuant to 28 U.S.C. § 3205(b)(5).

On May 5, 2023, the Government filed its response to Defendant's Objections. See Dkt. No. 22 ("Response"). In particular, the Government argues that a stay is not warranted because (1) the holding in Shkreli is supported by "a long and well established history of precedent,

3

[both] in the Second Circuit and nationwide," and (2) the Supreme Court has not yet granted the writ of certiorari. Resp. at 10. The Government also argues that Defendant is not entitled to have his forfeited assets credited toward his restitution balance, noting that forfeiture and restitution derive from separate statutory frameworks; restitution is authorized pursuant to the MVRA, while forfeiture is permitted by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(1). See id. at 12–16. Finally, the Government argues that a hearing is not warranted because the question of whether the CCPA exempts the Defendant's pension plan from garnishment is "simply a matter of statutory interpretation." Id. at 11 (quoting United States v. Canfield, No. 1-CR-0256, 2014 WL 6065769, at *3 (D. Ariz. Nov. 13, 2014)).

On May 16, 2023, this Court denied Defendant's request for a hearing, holding that there were "no factual disputes that might affect the applicability of [a garnishment] exemption under" 28 U.S.C. § 3202(d). See Civil Docket, Dkt. No. 27. On May 30, 2023, the Supreme Court denied certiorari for Shkreli. See Greebel v. United States, 22-583, 2023 WL 3696133 (U.S. May 30, 2023); see also Civil Docket, Dkt. No. 28.

### III.  LEGAL STANDARD

"The [MVRA] is one of several federal statutes that govern federal court orders requiring defendants convicted of certain crimes to pay their victims restitution." Lagos v. United States, 138 S.Ct. 1684 (2018). Under 18 U.S.C. § 3663A(a)(1) and (c)(1)(B), any offense "in which an identifiable victim or victims has suffered . . . pecuniary loss" must result in a court order that "the defendant make restitution to the victim of the offense."

18 U.S.C. § 3613(a) allows the Government to enforce a sentence of restitution against "all property or rights to property of the person fined." To this end, 28 U.S.C. § 3205(a) permits courts to "issue a writ of garnishment against property . . . in which the debtor has a substantial

nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." Because these provisions are "broad," they indicate "that Congress meant to reach every interest in property" possessed by defendants. United States v. Nat'l Bank of Com., 472 U.S. 713, 719–20 (1985). In effect, "the Government, in seeking garnishment, steps into the defendant's shoes, 'acquir[ing] whatever rights [he] himself possesses.'" Shkreli, 47 F.4th at 73 (quoting Nat'l Bank of Com., 472 U.S. at 725).

IV.   **DISCUSSION**

    A.   **Pension Fund Exemption Under the Consumer Credit Protection Act**

While the MVRA grants the Government sweeping authority to garnish an offender's assets, it also prescribes certain restrictions. As is relevant here, the MVRA provides that a writ of garnishment is limited by "the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. [§] 1673)." 18 U.S.C. § 3613(a)(3) (alteration in original). 15 U.S.C. § 1673(a) provides that "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed . . . 25 per centum of his disposable earnings for that week." "Earnings" are defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and *includes periodic payments pursuant to a pension or retirement program*." 15 U.S.C.A. § 1672 (emphasis added).

In Shkreli, the Government received a writ of garnishment authorizing it to appropriate the defendant's retirement accounts. See Shkreli, 47 F.4th at 70. On appeal, the defendant asserted that his retirement funds should be subject to the CCPA's twenty-five percent "earnings" cap, despite the fact that the periodic payments had not yet started. The defendant

5

reasoned that their lump-sum retirement fund constituted "earnings" under the CCPA "because the definition of earnings is not based on the timing of the payment but rather the compensatory nature of the payment." Id. at 76 (internal quotation marks omitted).

The Second Circuit concluded that lump-sum pension funds are *not* subject to the garnishment cap, and therefore may be appropriated in their entirety. The Shkreli court noted that "Congress limited the type of retirement payments that qualified as earnings to periodic payments," and that the statutory text is therefore "rendered superfluous if Congress intended to cover non-periodic payments, like single lump-sum distributions from retirement accounts, as [the defendant] claims." Id. at 77. Furthermore, speaking to the purpose of the CCPA, the Supreme Court has held that the CCPA cap is only intended to protect "periodic payments of compensation needed to support the wage earner and his family on a week-to-week, month-to-month basis." Kokoszka v. Belford, 417 U.S. 642, 651 (1974). The Shkreli court thus concluded that "[n]othing suggests Congress intended the CCPA to protect lump-sum liquidations of retirement accounts, which are often invested for decades, from being used to cover restitution obligations arising out of criminal convictions." Shkreli, 47 F.4th at 70.

Because certiorari was denied, Shkreli is controlling, and this Court is required to hold that Defendant's lump-sum retirement funds are not protected by the CCPA's cap on the garnishment of earnings. The Court therefore rejects Defendant's objections to the Writ. Consequently, the Government is directed to provide proposed orders of garnishment to the Court.

### B.     Defendant's Restitution Balance

Defendant also objects on the basis that the value of his forfeited assets have not been credited to his restitution balance. See Objs. at 2–3. This objection is unavailing. As the

Government correctly notes, "[f]orfeiture and restitution are legally separate obligations, governed by different statutory frameworks;" an order of forfeiture is issued pursuant to 28 U.S.C. § 2461(c), while restitution is required under 18 U.S.C. § 3663A(a)(1). Resp. at 13.

This dual burden is appropriate because "[f]orfeiture and restitution are separate remedies with different purposes." United States v. Pescatore, 637 F.3d 128, 138 (2d Cir. 2011). The purpose of forfeiture is to "interfere with criminal activity and at the same time impose an economic sanction upon criminals and those who connive with them, thus deterring crime," United States v. Torres, 703 F.3d 194, 203 (2d Cir. 2012) (citation omitted), while the purpose of restitution is to "compensate victims for harm suffered as result of criminal activity," id.

However, it is possible to apply forfeited funds toward restitution. Congress has granted the Attorney General broad authority to "grant petitions for mitigation or remission of [criminal] forfeiture, restore forfeited property to victims[,] . . . or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section." 21 U.S.C. § 853; see also 18 U.S.C. § 982 (establishing the framework for criminal forfeiture, and providing that "[t]he forfeiture of property . . . shall be governed by the provisions of" 21 U.S.C. § 853). This authority over remission is codified in 28 C.F.R. §§ 9.1 *et seq.*:

> The regulations outline specific procedures by which both owners of forfeited property and victims of offenses underlying the forfeiture of property may seek remission of forfeited funds. 28 C.F.R. § 9.4 and § 9.8. A victim may file a petition with the . . . the Attorney General of the United States. 28 C.F.R. § 9.8(a)(1); 28 C.F.R. § 9.3(e). The petition must be addressed to the Attorney General and submitted to the United States Attorney for the district in which the judicial forfeiture proceedings were brought, 28 C.F.R. § 9.4(e). Thereafter, the seizing agency will conduct an investigation and submit a written report to the U.S. Attorney, who will forward the petition and a recommendation to the Chief of the Asset Forfeiture and Money Laundering Section, of the Criminal Division

> of the Department of Justice. 28 C.F.R. § 9.1(b)(2); 28 C.F.R. § 9.4(f); United States v. Dharia, 284 F. Supp. 3d 262, 271 (E.D.N.Y. 2018). The Chief makes a ruling without a hearing. 28 C.F.R. § 9.4(g). If the petition is denied, the petitioner may request reconsideration within the agency. 28 C.F.R. § 9.4(j)-(k).

McCarthy v. Martinelli, 22-CV-7359, 2023 WL 385405, at *3 (E.D.N.Y. Jan. 11, 2023), reconsideration denied, 22-CV-7359, 2023 WL 1864120 (E.D.N.Y. Feb. 9, 2023).

Pursuant to the above rules, and as the Government observes, Defendant may seek to have his forfeited assets credited toward his restitution balance in a process known as "restoration." See Resp. at 14. This process was established because, "in many cases, defendants are left with little or no property after the forfeiture is completed[;]" when a defendant is left without sufficient assets to satisfy their restitution obligations, the Government may exercise its discretion to "forfeit property and transfer the proceeds to the court in satisfaction of the defendant's order of restitution." See United States Department of Justice Criminal Division Asset Forfeiture Policy Manual, Chapter 14: Forfeiture and Compensation for Victims of Crime, available at https://www.justice.gov/criminal-afmls/file/839521/download (last visited July 13, 2023).

The Second Circuit has not specifically held that district courts lack the authority to order the application of forfeited assets to a defendant's restitution obligation. However, it *has* held the inverse: that district courts do not have the authority to reduce a forfeiture order based on a defendant's payments toward restitution. See United States v. Bodouva, 853 F.3d 76, 78–79 (2d Cir. 2017) ("Because the statutory schemes authorizing restitution and forfeiture are separate, district courts are bound not to reduce the amount of a mandatory criminal forfeiture order by the amount of past or future restitution payments, in the absence of specific statutory authorization to do so."). Other courts in this Circuit have interpreted this holding to mean that district courts are

8

without the authority to order the crediting of forfeited assets toward a restitution balance. See, e.g., United States v. Kenner, 443 F. Supp. 3d 354, 383 (E.D.N.Y. 2020) (interpreting Bodouva to hold that "courts cannot order that the forfeitable assets be deducted from the restitution obligation without specific statutory authorization"); United States v. Pratt, 17-CR-262, 2018 WL 2871840, at *3 (E.D.N.Y. June 11, 2018) ("While the government has discretion and can decide to apply forfeited funds to restitution, the Court is not aware of any authority to order the Government to exercise its discretion in a particular case.").

Although Bodouva is not directly on point, its reasoning applies to this case. Congress has created separate frameworks for restitution and forfeiture, and it expressly delegated authority over remission and restoration to the Attorney General. See Bodouva, 853 F.3d at 78–79. This Court therefore follows its sister courts in holding that it lacks the ability to order the Government to credit Defendant's forfeited assets toward his restitution obligations. This is consistent with the approach taken by other circuits, which have held that district courts lack the authority to apply forfeited assets toward restitution obligations. See, e.g., United States v. Joseph, 743 F.3d 1350, 1354 (11th Cir. 2014) ("In light of the statutory framework governing restitution and forfeiture, we hold that a district court generally has no authority to offset a defendant's restitution obligation by the value of forfeited property held by the government, which is consistent with the approach taken by the Fourth, Seventh, Eighth, Ninth, and Tenth Circuits.").

However, Defendant is not without recourse. 18 USCA § 3664(k) provides that a defendant "shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. . . . Upon receipt of the notification, the court may, on its own motion, or the motion of any party,

including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." Similarly, 18 USCA § 3664(o)(1)(D) expressly recognizes the authority of the courts to adjust restitution orders pursuant to 18 USCA § 3664(k). Therefore, if Defendant is not able to satisfy his restitution obligations, and if the Government refuses to credit Defendant's forfeited assets to the remainder of his restitution balance, then Defendant may notify the Court and seek an adjustment in his payment schedule.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Objections to the Writ are **REJECTED**; and it is further

**ORDERED**, that the Government file proposed orders of garnishment with the Court in relation to the assets held by Pioneer Bank and Principal Trust; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

DATED:   July 14, 2023
         Albany, New York

LAWRENCE E. KAHN
United States District Judge